JUDGE SWAIN

07 CIV 7463

BAKER & McKENZIE LLP
Attorneys for the Plaintiffs
James David Jacobs (JJ-7351)
1114 Avenue of the Americas
New York, NY 10036
(212) 626-4100

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



RECEIVED
AUG 23 2007
U.S.D.C. S.D.N.Y.
CASHIERS

| | |
|---|---|
| SHAHIR SHAHIDSALESS and FARANAK SHAKOORI,<br><br>Plaintiffs,<br><br>-against-<br><br>SHIRIN EBADI<br><br>Defendant. | ____ Civ. ____<br><br>COMPLAINT |

Plaintiffs Shahir Shahidsaless and Faranak Shakoori, by their attorneys, Baker & McKenzie LLP, as and for their complaint against defendant Shirin Ebadi, aver as follows:

### JURISDICTION

1. Jurisdiction arises under 28 U.S.C. § 1332 (diversity) in that the amount in controversy exceeds $75,000.00 and this action is between citizens of different states.

### THE PARTIES

2. Plaintiff Shahir Shahidsaless ("Shahidsaless") was, at all material times, a Canadian citizen and had his principal residence in Toronto Canada.

3. Plaintiff Faranak Shakoori ("Shakoori") was, at all material times, a Canadian citizen and had her principal residence in Toronto Canada.

NYCDMS/1044196.6

4. Defendant Shirin Ebadi ("Ebadi") was, at all material times, an Iranian citizen, and had her principal residence in Tehran, Iran.

**BACKGROUND**

5. Shahidsaless graduated from the Engineering program at Sharif University in Tehran, Iran in 1975. After immigrating to Canada in 1992, Shahidsaless has written political articles for Farsi-speaking newspapers. In 2003 Shahidsaless wrote a book in Farsi entitled "Sun in the Mist", which was originally published in Germany and subsequently published in Iran in 2004. Ebadi wrote a preamble for the Iranian edition.

6. Currently, Shahidsaless is a full-time political analyst writing for various Farsi-speaking media. Due to the fact that his writings are investigative in nature, maintaining impartiality as much as possible, different groups with various political tendencies inside and outside Iran – from the left or the right – publish and disseminate his work.

7. Upon information and belief Ebadi is a graduate lawyer from the University of Tehran in 1969. In 1975 she became the first woman to preside over a legislative court. After the Iranian revolution in 1979, the government prohibited women from becoming judges and Ebadi returned to the practice of law. Ebadi also served as a lecturer at the University of Tehran, and became involved in human rights activities, particularly relating to the rights of women and children. She has published a number of books. She has also authored numerous articles for various news agencies. Due to her efforts in human rights and democracy, among other awards and honory degrees, she received the Nobel Peace Prize in 2003.

8. On or about October 3, 2004 Ebadi wrote the aforementioned preamble to a book that Shahidsaless wrote and subsequently published in Iran entitled "Sun in the Mist".

9. In or about November, 2004 Shahidsaless from Toronto called Ebadi in Tehran to thank her for the writing the preamble to his book.

10. During the course of the November, 2004 conversation Ebadi proposed that Shahidsaless and Ebadi co-author a book (the "Book") in response to Samuel Huntington's Clash of Civilizations Theory, published in February 1998.

11. Having read Shahidsaless' first book to which she had written the preamble, and knowing Shahidsaless' command of the English language and quality of research, Ebadi further stated that she had confidence that he had the ability to co-author a book with her on the topic.

12. During the conversation, Ebadi specified the themes and chapters of the Book.

13. Shahidsaless responded that he would only work on the Book if Ebadi would confirm that she would be a named co-author on the published Book.

14. Shahidsaless explained that he would have to devote the next two years of his life on a full-time basis to the project and without Ebadi's participation and name, his lack of notoriety in the West would not generate sufficient book sales, and only Ebadi's participation as an author would guarantee readers and sales.

15. Ebadi provided firm assurance to Shahidsaless that she was serious about the project, that would participate in and complete the co-authored Book with him, and that would publish the co-authored Book with him.

16. Relying on Ebadi's offer and assurances that Ebadi would co-author and publish the Book, Shahidsaless agreed to co-author the Book.

17. Shahidsaless devoted the next one and one-half years of his life to the co-authoring with Ebadi the Book.

18. Shahidsaless forewent other income-earning opportunities, modified his personal life to accommodate the project, and otherwise devoted himself to researching the material for the Book, writing his portion of the Book, and revising the portions of the Book that Ebadi wrote.

19. Thereafter, Shahidsaless and Ebadi conferred on the themes and outline of the Book.

20. On or about December 4, 2004 Shahidsaless sent an email to Ebadi outlining the main themes of the Book as had been suggested by Ebadi.

21. After reviewing the main themes suggested in the Shahidsaless December 4, 2004 email Ebadi proposed to write the chapter that dealt with Islam and its compatibility with Universal Declaration of Human Rights and suggested that Shahidsaless write the other parts of the co-authored Book with her input and approval.

22. Ebadi subsequently wrote the chapter that dealt with Islam and its compatibility with the Universal Declaration of Human Rights.

23. On a regular basis thereafter Shahidsaless and Ebadi conferred, in person, by telephone, email and express mail regarding the content and style of Book.

24. Between January 2005 and June, 2005 Shahidsaless had completed approximately one-third of the Book.

25. To help write the Book Shahidsaless employed his wife, Faranak Shakoori, who is familiar with typing in the Farsi language and who was responsible for typing, editing and formatting the Book, also on a full-time basis.

26. On or around June 13, 2005 Shahidsaless emailed the work he had completed thus far on the Book to Ebadi.

27. In the June 13, 2005 communication Shahidsaless proposed that they title the Book "Clash of Civilizations; a Theory or a Doctrine".

28. In reply Ebadi proposed that the name of the Book be changed to "A Useful Enemy", which name the co-authors eventually adopted.

29. On September 17, 2005 Shahidsaless sent the second portion of the Book to Ebadi.

30. Pursuant to numerous intervening telephone conversations on the content of the Book, Ebadi and Shahidsaless agreed to meet in Germany, to where Ebadi was going, to discuss further details of the Book.

31. Shahidsaless traveled to Germany at his own expense and, on or about October 22, 2005, met with Ebadi in Hamburg, Germany.

32. During the October 22, 2005 meeting, Ebadi and Shahidsaless spent over 9 hours discussing the content of the Book.

33. During the meeting Ebadi provided to Shahidsaless her detailed views and observations.

34. Shahidsaless subsequently incorporated Ebadi views and observations into the Book.

35. On or about December 28, 2005 Ebadi wrote an email to Shahidsaless stating that she wanted to meet with Shahidsaless on an urgent basis on the dates that she would be in New York City in or around January, 2006.

36. On or about January 22, 2006 Shahidsaless at his own expense traveled to New York City and met with Ebadi at the Park Hyatt Hotel in New York City.

37. During the January 22 meeting Shahidsaless and Ebadi discussed the Book and agreed on content and editorial changes.

38. During that meeting Ebadi advised Shahidsaless that she had signed a contract for publishing her Memoir, later entitled "Iran Awakening: A Memoir of Revolution and Hope" ("Memoir") with Random House

39. Ebadi further suggested that she would like to try publishing the Book through Random House first before exploring other publishers.

40. During the said January 22, 2006 meeting Shahidsaless expressed doubts to Ebadi that Random House would publish the Book.

41. During the said January 22, 2006 meeting Shahidsaless asked Ebadi whether she had an exclusivity agreement with Random House, to which she replied "no".

42. Shahidsaless and Ebadi agreed that Ebadi would first attempt to publish the Book through Random House.

43. Shahidsaless and Ebadi further agreed that, if Random House refused to publish the Book, Shahidsaless would pursue other publishers on behalf of Shahidsaless and Ebadi in order to find a suitable publisher for the Book.

44. Furthermore, because of Ebadi having won the Nobel Peace Prize, during the January 22, 2006 meeting Shahidsaless and Ebadi agreed that Ebadi would be the first named author and that Shahidsaless's name would come second.

45. Also during the January 22, 2006 meeting Ebadi stated that, since she had a contract with Random House to receive a $350,000 advance payment on the publication of her Memoir, and considering that the co-authored Book involved two authors – Shahidsaless and Ebadi – she would ask Random House for $700,000 USD in advance, plus a percentage from the proceeds of the sale of the co-authored Book (15% of the cover-price of a hardcover copy, 5% of the cover-price of a paper-back copy, and 80% of royalties for selling the translation rights of the co-authored Book into other languages, in addition to 5% of the cover-price of the sale of any translated copies), all of which Shahidsaless and Ebadi would divide equally.

46. Shahidsaless told Ebadi to request for $1,000,000 USD advance payment, to which Ebadi did not raise any objections.

47. In or around March, 2006 Ebadi, among other requests, instructed Shahidsaless to take any references to Noam Chomsky out of the co-authored Book for various political reasons.

48. Although he disagreed with removing references to Noam Chomsky, Shahidsaless obliged.

49. On or about March 11, 2006 Shahidsaless sent the final version of the Book in Farsi to Ebadi.

50. Ebadi did not propose any changes to the content of the book.

51. As she had to submit the copy to her agent in English Ebadi asked Shahidsaless to translate Book from Farsi into English.

52. Shahidsaless explained to Ebadi that it as a very difficult task to translate such a sophisticated Book into English.

53. Accordingly, Shahidsaless recommended to Ebadi that they employ a professional translator to translate the Book.

54. Additionally, after having toiled for many months of long days on the Farsi version of the Book, he was not only physically tired, but also had suffered serious neck and back pain that his doctors later attributed to long hours in front of a computer.

55. Nevertheless, Ebadi insisted that Shahidsaless personally translate the Book in order that the existence and contact of the Book was not leaked to the public.

56. Ebadi advised Shahidsaless that the quality of the translation was not important; as they had done with her Memoir, the publishers would edit the Book completely.

57. At the direct request of Ebadi, and despite the difficulties and challenges present, Shahidsaless translated the entire manuscript of the Book from Farsi into English.

58. At Shahidsaless's behest Faranak Shakoori typed and formatted the translated English version of the Book.

59. Shahidsaless emailed the completed Book in English to Ebadi's friend, Dr. Ershadi, on or about May 21, 2006.

60. Upon information and belief shortly thereafter Dr. Ershadi caused the Book to be delivered it to Ebadi.

61. Upon information and belief on or about May 23, 2006 Ebadi submitted an English manuscript of the Book to her agent in New York, Wendy J.Strothman, for Ms. Strothman to present the Book to Random House for publication.

62. On or around July 1, 2006 Shahidsaless, who had not yet received a response from Ebadi regarding the Book, wrote an email to Ebadi enquiring about the status of the submission to Random House.

63. In the email Shahidsaless reminded Ebadi again that, should Random House refuse to publish the Book, Shahidsaless and Ebadi would have no problem finding another publisher.

64. On or around July 8, 2006 Ebadi wrote in an email to Shahidsaless that stated in substance that both her literary agent and Random House recommended against her publishing the Book because this would damage sales of her future books.

65. In later correspondence dated July 22, 2006 Ebadi, referred to self-interested political motivations as her reason for breaching her agreement with Shahidsaless to publish the Book as a co-author.

66. Despite many exchanges of correspondence, both the correspondence referred to above and other correspondence, numerous telephone conferences, and meetings, Ebadi never denied Shahidsaless' repeated statements to Ebadi that Ebadi is the coauthor of the Book, that she agreed to be listed as a coauthor of the Book, that she agreed to cooperate in having the Book published, and that Shahidsaless conditioned his involvement in writing the Book upon Ebadi's participating in the writing of the Book and being a named as co-author on the Book when published.

## FOR AND AS A FIRST CLAIM
(Breach of Contract)

67.  Shahidsaless has fully performed his obligations under his agreement with Ebadi to co-author and attempt to publish the Book that names both Shahidsaless and Ebadi as authors.

68.  Ebadi has breached her agreement with Shahidsaless in at least the following respects:

   1.  Ebadi refused to permit Shahidsaless to present the Book for publication naming both Shahidsaless and Ebadi as authors.

   2.  Ebadi refused to participate with Shahidsaless in presenting the Book to publishers other than Random House for publication.

69.  Because Ebadi has breached her agreement with Shahidsaless, Shahidsaless has not only suffered the loss of the proceeds he would have otherwise received if Ebadi had not breached her agreement, but also has not received the fame and notoriety that would have enabled him to publish other books and reap the monetary rewards therefrom.

70.  By reason of the foregoing Shahidsaless has been damaged in the sum of no less than $ 1,000,000.

## FOR AND AS A SECOND CLAIM
(Quantum Meruit)

71.  Shahidsaless and Shakoori repeat and re-allege paragraphs 1 through 70 this complaint as if fully set forth here.

72. At Ebadi's behest, request and knowledge Shahidsaless and Shakoori rendered services to Ebadi including, but not limited to, researching, writing, typing and translating the Book

73. The reasonable value of the services rendered by plaintiffs is $ 300,000.

74. By reason of the foregoing plaintiffs have been damaged in the sum of $ 300,000.

## RELIEF REQUESTED

WHEREFORE, Shahidsalesss request judgment against Ebadi:

a) On the first claim awarding Shahidsaless his damages is an amount of no less than $ 1,000,000.

b) On the second claim awarding plaintiffs Shahidsaless and Shakoori their damages in the sum of $ 300,000.

c) Awarding plaintiffs their costs, disbursements and attorneys' fees; and

d) Granting plaintiffs such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       August 21, 2007

BAKER & McKENZIE LLP

By: _____
James David Jacobs (JJ-7351)
1114 Avenue of the Americas
New York, New York 10036
(212) 891 3951
*Attorneys for Plaintiffs*